# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02471-SBP

ALI FARZANEH JAJERMI and
HASSAN FARZANEH JAJARMI,

      Plaintiffs,

v.

MARCO RUBIO, in his official capacity as Secretary of State, United States Department of State,
PAMELA BONDI, in her official capacity as Attorney General of the United States,
KRISTI NOEM, in her official capacity as Secretary, United States Department of Homeland
Security, CHRISTOPHER LANDAU, in his official capacity as Deputy Secretary of State,
JOSÉ CUNNINGHAM, in his official capacity as Assistant Secretary of State, REED D.
RUBINSTEIN, in his official capacity as Acting Legal Adviser, United States Department of State,
KRISTINA KVIEN, in her official capacity as Ambassador to Armenia, United States Department
of State, DAVID ALLEN, in his official capacity as Deputy Chief of Mission of the U.S. Embassy in
Armenia, United States Department of State, and STEPHANIE ZAKHEM, in her official capacity as
Chief, Consular Section of the U.S. Embassy in Armenia, United States Department of State,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

      Plaintiffs Ali Farzaneh Jajermi ("Plaintiff-Father") and Hassan Farzaneh Jajarmi

("Plaintiff-Son") bring this action to compel adjudication of the immigrant-visa applications

(DS-260 applications) for Plaintiff-Son and his accompanying family members—his wife and

minor child. Defendants Marco Rubio, Pamela Bondi, Kristi Noem, Christopher Landau, José

Cunningham, Reed D. Rubinstein, Kristina Kvien, David Allen, and Stephanie Zakhem

(collectively,[1] "Defendants" or the "State Department") have moved to dismiss the case for failure to state a claim upon which relief can be granted. ECF No. 11 ("Motion" or "Motion to Dismiss"). Plaintiffs oppose the Motion. ECF No. 15. Defendants have replied. ECF No. 19. Plaintiffs have also filed a Notice of Supplemental Facts. ECF No. 23. The undersigned fully presides over this case pursuant to 28 U.S.C. § 636(c)(1), the parties' consent (ECF No. 12), and the Order of Reference (ECF No. 13).

Having carefully considered the Motion and associated briefing, the entire docket (including the supplemental filing), and the applicable law, the court respectfully **GRANTS** the Motion.

## BACKGROUND

The impetus for this litigation is the pursuit of a family-sponsored immigrant visa in the "F3" preference category, which permits the married sons and daughters of U.S. citizens to immigrate to the United States based on a petition filed by their U.S.-citizen parent. *See* 8 U.S.C. § 1153(a)(3). The court begins with an overview of the family-sponsored visa process generally, then sets forth the specific facts concerning the handling of the visa application at issue here, drawn from the filings in this case.

***Statutory and regulatory framework.*** The Immigration and Nationality Act ("INA"), 8

---

[1] Plaintiffs originally sued Antony J. Blinken, Merrick B. Garland, Alejandro N. Mayorkas, Kurt M. Campbell, Rena Bitter, and Richard C. Visek in their official capacities. ECF No. 1. However, because Defendants are each named only in their official capacities for actions taken in their respective roles under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq*., and its implementing regulations, their successors—Marco Rubio, Pamela Bondi, Kristi Noem, Christopher Landau, José Cunningham and Reed D. Rubinstein—are automatically substituted as parties to this action. *See* Fed. R. Civ. P. 25(d).

U.S.C. § 1101 *et seq.*, governs the admission of noncitizens. "Consular officers may issue a visa to 'an immigrant who has made [a] proper application' demonstrating eligibility." *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) (quoting 8 U.S.C. § 1201(a)(1)(A) (alteration in original)). The applicant bears the burden to establish eligibility. 8 U.S.C. § 1361.

Family-sponsored immigration proceeds in two stages. First, a U.S. citizen (or lawful permanent resident) files a Form I-130 with U.S. Citizenship and Immigration Services ("USCIS") to establish a qualifying family relationship. *See* 8 U.S.C. §§ 1151, 1153(a), 1154; 8 C.F.R. § 204.1. Approval of the petition does not itself confer any right to a visa; rather, it permits the beneficiary to seek an immigrant visa through the Department of State once a visa is available in the relevant preference category. *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 47 (2014) (stating that approval of a petition does not result in the noncitizen receiving a visa immediately, "but only in getting a place in line" to seek an immigrant visa). As relevant here, the INA limits the number of immigrant visas that can be issued for certain "family preference" categories, including F3 visas for the married children of a U.S. citizen. *See* 8 U.S.C. § 1153(a)(3).

After USCIS approval, the National Visa Center ("NVC") pre-processes the case and, when documentarily qualified and an appointment is available, schedules an in-person consular interview. *See* 22 C.F.R. §§ 42.62, 42.63; 9 Foreign Affairs Manual ("FAM") ([Immigrant Visa] Application Processing)[2] §§ 504.1-2, 504.4-6. Following the interview, the consular officer

---

[2] The public version of the Foreign Affairs Manual, which the court references here, is available at https://fam.state.gov (last visited September 22, 2025). The court takes judicial notice of

"must" either issue the visa or refuse it under applicable law, including INA §§ 212(a) and 221(g).[3] *See* 22 C.F.R. § 42.81(a); *see also* 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it."). Consular officers "cannot temporarily refuse, suspend, or hold the visa for future action" at that point. 9 FAM § 504.1-3(g); *see also id.* § 504.9-2 (same). Therefore, any applicant "to whom a visa is not issued by the end of the working day on which the application is made, or by the end of the next working day . . . *must* be found ineligible[.]" 9 FAM § 504.1-3(i)(1) (emphasis added). The "requirement to find an applicant ineligible when a visa is not issued applies even when" the consular officer decides to attempt to track down additional information. *Id.* The FAM emphasizes that "[t]here is no such thing as an informal refusal or a pending case once a formal application has been made." *Id.*

---

information available on websites administered by the federal government. *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n.22 (10th Cir. 2009) (stating that courts may take judicial notice of government websites); Fed. R. Evid. 201(b)(2) (stating that judicial notice may be taken of a fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot readily be questioned").

[3] Following reordering of the INA, § 221 is now properly cited as 8 U.S.C. § 1201(g), which provides in relevant part:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]

8 U.S.C. § 1201(g).

Even if an application is refused, a consular officer may "conclude that the applicant could perhaps still receive a visa eventually if circumstances change." *Karimova*, 2024 WL 3517852, at *2. In that event, "the consular officer may choose to place an officially refused application in administrative processing." *Id.* "Such an applicant cannot come into the United States since the consular officer has refused to issue [him] a visa. But that refusal may (or may not) be overcome with new information at a later date." *Id.* (citing 9 FAM § 306.2-2(A)(a)) If the consular officer receives sufficient new information, the officer can determine that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case. 9 FAM § 306.2-2(A)(a)(2). "Unless and until that happens, though, the visa application remains officially refused." *Karimova*, 2024 WL 3517852, at *2.

***Plaintiff-Son's Visa Process***. Plaintiff-Father, Ali Farzaneh Jajermi, is a U.S. citizen who resides in Arapahoe County, Colorado. ECF No. 1 ¶¶ 2, 17. Plaintiff-Son, Hassan Farzaneh Jajarmi, is a citizen of Iran seeking to immigrate to the United States. *Id.* ¶ 2. On June 4, 2008, Plaintiff-Father filed a Form I-130, Petition for Alien Relative, on behalf of Plaintiff-Son with USCIS. *Id.* ¶ 3. USCIS approved the petition on September 26, 2008, classifying Plaintiff-Son in the F3 (married son of a U.S. citizen) family-preference category. *Id.* ¶ 3; ECF No. 11 at 2.

At an unspecified date before May 2023, Plaintiff-Son submitted a "DS-260" application for an immigrant visa to the State Department. ECF No. 11 at 2. As the application moved into consular processing, the NVC sent correspondence dated May 23, 2023, regarding the scheduling of immigrant-visa interviews at the U.S. Embassy in Yerevan, Armenia. ECF No. 1-2 at 11-13; ECF No. 11 at 2. On July 17, 2023, the Embassy emailed Plaintiff-Son requesting extensive additional information in support of the DS-260 immigrant-visa application, including

5

biographical, educational, address, social-media, military, and professional details. ECF No. 1 at 3; ECF No. 1-2 at 7-9; ECF No. 11 at 2; ECF No. 15 at 3. Plaintiffs allege they promptly responded to the Embassy's July 17, 2023 request. ECF No. 1 ¶ 4; ECF No. 11 at 2.

On July 24, 2023, Plaintiff-Son and his wife and son appeared for in-person immigrant-visa interviews at the U.S. Embassy in Yerevan, Armenia. ECF No. 1 ¶ 5; ECF No. 11 at 2-3; ECF No. 15 at 3. At the conclusion of the interviews, a U.S. consular officer issued a notice of refusal of the visa application pursuant to § 221(g). *See* ECF No. 1 ¶ 6; ECF No. 11 at 3; ECF No. 15 at 3; ECF No. 19 at 1-2; *see also* 8 U.S.C. § 1201(g) (describing grounds on which a visa may be refused). Consistent with that outcome, the family was "handed a 221(g) form noting that their immigrant visa applications were subject to additional 'Administrative Processing.'" ECF No. 1 ¶ 6 (citing ECF No. 1-2 at 15). The visa applications for Plaintiff-Son and his family remain "Refused" of the date of this Order. *See* https://ceac.state.gov/CEACStat/Tracker/Status.aspx, last visited September 24, 2025.[4]

In this case, Plaintiffs contend that the State Department has unreasonably delayed adjudicating the immigrant-visa applications for Plaintiff-Son and his accompanying family

---

[4] The briefing sometimes refers, in a shorthand manner, only to "Plaintiff-Son's visa application." *See*, *e.g*., Defendants' phrasing in the Motion and Reply. The pleading, however, makes clear that Plaintiffs seek adjudication of all three family members' DS-260 immigrant-visa applications: the son, his wife, and their child. *See* ECF No. 1 ¶¶ 1, 7, 10, 12, 16, 34, 40-41, 45, 47, 49-51, 54-56; ECF No. 1 at 13 (prayer for relief); ECF No. 1-2 at 11–13 (NVC interview notice for the family) & 15 (§ 221(g) form issued at the interview); Pls.' Opp'n (ECF No. 15) at 3 (identifying the three applicants and describing the interview-day § 221(g) notice).

members[5] and seek to compel agency action under 5 U.S.C. §§ 555(b), 706(1) and the Mandamus Act, 28 U.S.C. § 1361. ECF No. 1 at 9–11 (Counts I–II). Plaintiffs emphasize that they challenge only delay—not the grant or denial of the applications—and allege the cases have remained ready for adjudication well beyond a reasonable time. *Id.*

Defendants move to dismiss under Rule 12(b)(6), arguing (1) the applications were already refused under INA § 221(g), 8 U.S.C. § 1201(g), so Plaintiffs cannot plead failure to adjudicate; (2) any substantive challenge to that refusal is foreclosed by the doctrine of consular nonreviewability; and (3) Plaintiffs have not plausibly alleged unreasonable delay. ECF No. 11 at 6–7, 10–11. As to mandamus, Defendants recite the elements of such a claim as articulated by the Tenth Circuit, including that a plaintiff must show "no other adequate remedy," *see Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005), and contend Plaintiffs cannot satisfy the standard. ECF No. 11 at 6–7.

Plaintiffs vigorously dispute that a "final adjudication" has occurred. They maintain the case remains in § 221(g) administrative-processing status and ask only that the court require a final adjudication—i.e., completion of any needed administrative processing and a decision to issue or refuse—within a reasonable time. ECF No. 15 at 2–4, 7–8, 11. They argue a § 221(g) "refusal" is non-final and may be overcome, and cite State Department materials and their exhibit to that effect. ECF No. 15 at 1–3 & Ex. 1. Finally, Plaintiffs contend that a disposition of

---

[6] The court's analysis here closely tracks its recent decision in *Jung v. Goldman*, No. 24-cv-02500-SBP, 2025 WL 2687983, at *1 (D. Colo. Sept. 19, 2025), which addressed analogous claims in the context of a K-1 visa application and similarly concluded that a § 221(g) refusal discharged the consular officer's nondiscretionary duty, rendering the plaintiff's injury non-redressable and subject to dismissal for lack of standing.

their unreasonable-delay claims is inappropriate on a motion to dismiss and should be decided "in a merits proceeding on the underlying complaint[.]" ECF No. 15 at 15.

In reply, Defendants reiterate that (1) Plaintiff-Son's application was refused under § 221(g); (2) consular nonreviewability bars any challenge to that refusal; and (3) Plaintiffs have not stated a plausible unreasonable-delay claim. ECF No. 19 at 1–2. They also emphasize the regulatory framework requiring a consular officer to "issue the visa (or) refuse the visa," citing 22 C.F.R. § 42.81. ECF No. 19 at 5.

Although Defendants do not assert mootness as a ground for dismissal in their Motion, Plaintiffs address that concept and argue the case is not moot because the court can order Defendants to complete administrative processing more quickly. ECF No. 15 at 11. In reply, Defendants respond to Plaintiffs' mootness point by saying Plaintiffs already received a refusal and have identified no duty to reconsider that decision. ECF No. 11 at 1–2, 6–7; ECF No. 15 at 11; ECF No. 19 at 6–7.

## ANALYSIS

The parties' briefing does not address the threshold issue of jurisdiction, save for Plaintiffs' contention that the case is not moot. Recognizing that jurisdiction must be confirmed before any action can be taken in this matter, the court begins there. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (stating that the court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party") (citation omitted). And if this "court determines at any time that it lacks subject-matter

jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).[6]

## I.      Article III Standing Is the Relevant Jurisdictional Inquiry.

"The Constitution limits the exercise of the judicial power to 'cases' and 'controversies.'"

*WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1181 (10th Cir. 2012) (citing

U.S. Const. art. III, § 2). "Without a live, concrete controversy, [the court] lack[s] jurisdiction to

consider claims no matter how meritorious." *Rio Grande Silvery Minnow v. Bureau of*

*Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Habecker v. Town of Estes Park*,

518 F.3d 1217, 1223 (10th Cir. 2008)). Standing and mootness are aspects of Article III's case-

or-controversy requirement. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 67

(1997). Even so, they are "distinct justiciability doctrines' with different jurisdictional burdens."

*Meleo v. Blinken*, No. CV 23-03495 (RK), 2024 WL 4345289, at *7 (D.N.J. Sept. 30, 2024)

(quoting *Hartnett v. Pennsylvania State. Ed. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020); citing

*Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 204 (3d Cir. 2022) ("The difference is not

merely one of semantics.")). Unlike mootness, "plaintiffs bear the burden of establishing

standing." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (citing

*Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

"Standing doctrine addresses whether, *at the inception of the litigation*, the plaintiff had

suffered a concrete injury that could be redressed by action of the court." *Utah Animal Rights*

---

[6] The court's analysis here closely tracks its recent decision in *Jung v. Goldman*, No. 24-cv-02500-SBP, 2025 WL 2687983, at *1 (D. Colo. Sept. 19, 2025), which addressed analogous claims in the context of a K-1 visa application and similarly concluded that a § 221(g) refusal discharged the consular officer's nondiscretionary duty, rendering the plaintiff's injury non-redressable and subject to dismissal for lack of standing.

*Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1263 (10th Cir. 2004) (McConnell, J., concurring) (emphasis added). Mootness, by contrast, "is 'standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019 (quoting *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016)). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point *during litigation*, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (cleaned up) (emphasis added); *accord Brown*, 822 F.3d at 1165.

Here, the government action that is the focus of this litigation—the refusal of the visa applications at the conclusion of the July 24, 2023 consular interviews and their immediate placement in administrative-processing status—occurred more than a year before Plaintiffs filed this action on September 6, 2024. *See* ECF No. 11 at 6–7; ECF No. 1 ¶ 6; ECF No. 15 at 3; ECF No. 19 at 1–2. The question thus is not whether an intervening, *post-filing* development deprives the court of jurisdiction, but rather whether Plaintiffs had suffered the requisite concrete injury at the time they brought the case. Standing, therefore, is the proper lens through which to view the jurisdictional question here, and this court is prohibited from evaluating the merits of the underlying claims until standing is confirmed. *See Colo. Outfitters*, 823 at 542, 544 n.5, 554 (remanding case to dismiss for lack of jurisdiction where district court had proceeded to assess the merits based on "some generous assumptions" about standing, and emphasizing that a ruling based on incorrect assumptions about jurisdiction "is no ruling at all") (citing *Cunningham v. BHP Petrol. Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) (explaining that a judgment

entered without jurisdiction is void)); *see also Martinez v. Baumann*, No. 5:24-CV-0894-JKP, --- F. Supp. 3d ---, 2025 WL 2109964, at *5 (W.D. Tex. July 28, 2025) (in a case challenging the pre-filing refusal and placement in administrative processing of a family member's visa application, "refram[ing] the parties' mootness arguments in terms of standing doctrine") (quotation omitted).

To establish Article III standing, Plaintiffs must show "(1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (cleaned up) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury "must actually exist," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), and the court cannot order an agency to do what it has already done. *See, e.g.*, *Zevallos v. Obama*, 10 F. Supp. 3d 111, 123 (D.D.C. 2014) (dismissing a claim under Rule 12(b)(1) when the plaintiffs were requesting an agency to take action it had already taken); *Martinez*, 2025 WL 2109964, at *6 ("If the visa application has been finally adjudicated, as Defendants contend, there is no action to compel, and no resulting injury to Plaintiff."). Redressability turns on whether there remains any discrete, legally required action for the court to compel after the § 221(g) refusal. If the consular officer already discharged the sole nondiscretionary duty to "issue the visa or refuse the visa," 22 C.F.R. § 42.81(a), and no statute or regulation imposes a specific obligation to complete post-refusal "administrative processing," then Plaintiffs' alleged injury is not redressable by this court.

With these principles in mind, the court turns to the substance of the standing question.

II.    **Plaintiffs Lack Standing Because Defendants Discharged Their Sole Nondiscretionary Duty by Refusing the Applications.**

The court respectfully finds that Plaintiffs have not met their burden to establish Article III standing for the claims asserted in this action.

### A.  APA and Mandamus Unreasonable-Delay Claims

Plaintiffs bring unreasonable-delay claims under the Administrative Procedure Act, 5 U.S.C. § 555(b), and the Mandamus Act. In both claims, they seek the same relief: an order compelling Defendants to complete any outstanding "administrative processing" and to render a final decision—i.e., to *issue or refuse*—on each of the three DS-260 immigrant-visa applications (for Hassan Farzaneh Jajarmi, his spouse, and their child) within a reasonable time. *See* ECF No. 1 at 10–11 (Counts I–II) & 13 (Prayer for Relief); Pls.' Opp'n (ECF No. 15) at 5–6, 11.

***Legal standards.*** As an initial matter, "[t]he Administrative Procedure Act generally permits a court to step in when an agency fails to act." *Salas v. Jaddou*, No. 24-cv-01526-DDD-CYC, --- F. Supp. 3d ---, 2025 WL 2158278, at *3 (D. Colo. July 22, 2025). Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Where"—as in this case—"no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'" *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004) (hereafter "SUWA") (quoting 5 U.S.C. § 704) (emphasis in original). Claims based on an alleged failure to take action are governed by 5 U.S.C. § 706(1). Under that provision, a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." *Id.* But not all instances of governmental inaction or delay may be pursued under the APA. "A claim under § 706(1) [of the APA] can proceed only where a

plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 64 (emphasis in original); *accord Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 875 (10th Cir. 2023). And Section 706(1)'s "limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law." *SUWA*, 542 U.S. at 65 (emphasis in original). Section 706(1) encompasses actions mandated by statute and by regulation. *Id.*

With respect to Plaintiffs' mandamus claim, mandamus has long been recognized to be "a drastic remedy, available only in extraordinary circumstances." *W. Shoshone Bus. Council ex rel. W. Shoshone Tribe of Duck Valley Rsrv. v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34-35 (1980)). And as the Tenth Circuit recently has confirmed, "[w]hen review by other means, such as under the APA, is possible, *mandamus isn't available*." *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1111 n.10 (10th Cir. 2023) (citing *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394 (1976)) (emphasis added). Thus, if Plaintiffs cannot state a failure-to-act claim under § 706(1) by identifying a discrete, legally required duty left undone, they cannot resort to mandamus as an alternative. *See id.*; *see also Rios*, 398 F.3d at 1206 (mandamus requires a clear right to relief, a plainly defined nondiscretionary duty, and no other adequate remedy).

***Evaluation of the record.*** Plaintiffs contend that the consular officer's initial "refusal" of the visa applications did not satisfy Defendants' obligation under the law because the government's assertion that it fulfilled its mandatory duty is based on a mischaracterization of the procedural term "refusal" that is ultimately unsupported by the INA and has been rejected by most courts. ECF No. 15 at 7. Plaintiffs further emphasize that Defendants' own materials

acknowledge that additional steps may remain after a § 221(g) refusal. They point to State Department public guidance stating that a refusal under § 221(g) reflects that the consular officer lacked sufficient information to find the applicant eligible at present, either because the application is incomplete and additional documentation is required or because the case requires further administrative processing before eligibility can be determined. ECF No. 15 at 2. Plaintiffs also note that the § 221(g) papers provided to them on the day of their consular interviews left all preprinted boxes (including the box labeled "Administrative Processing") unchecked and that they contained only the handwritten notation "CV – Zahra"—indicating that there were outstanding steps to be taken. *See* ECF No. 1-2 at 13, 15; ECF No. 15 at 3. For their part, Defendants contend that the governing regulation requires a consular officer, once an application is properly presented and the interview concluded, to either issue the visa or refuse it, and that occurred here, in compliance with under 8 U.S.C. § 1201(g). *See* ECF No. 11 at 7 (citing 22 C.F.R. § 42.81(a)). They further argue that a refusal under § 1201(g) satisfies the officer's adjudicative duty and defeats any claim of failure to act, regardless of any subsequent "administrative processing" that could, in the Department's discretion, lead to reopening or reconsideration of the visa applications. *See id*. at 8-9.

The problem for Plaintiffs is that they do not point to any law or regulation requiring Defendants to readjudicate visa applications that had already been "refused" before being placed in "administrative processing." "In fact, [Plaintiffs] ha[ve] not pointed to any law or regulation that concerns visas in 'administrative processing' at all." *See Yared v. Nepal*, No. 1:24 CV 2114, 2025 WL 1067738, at *4 (N.D. Ohio. Apr. 9, 2025); *see also* ECF No. 15 at 6-11 (no reference to any authority of this type in Plaintiffs' response). Additionally, although Plaintiffs submitted

supplemental facts derived from a FOIA response indicating that 78.3% of immigrant visa applications refused under § 221(g) between January 1, 2020, and January 1, 2025, were ultimately approved (ECF No. 23), this statistical evidence does not establish a legal duty to readjudicate or complete administrative processing. Neither has this court identified any law or regulation imposing such a duty.

The INA requires that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). As Defendants note, the INA provides that, after an interview, the consular officer must issue the visa or refuse the visa if the applicant is ineligible. *See* 8 U.S.C. §§ 1201(a), (g). The implementing regulations of the INA further emphasize the consular officer's sole obligation is to select one of these two options: "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa [.]"*See* 8 U.S.C. § 1201(g); 22 C.F.R. § 42.81(a).

Plaintiffs attempt to counter these statutory precepts by asserting that "[t]he overall scheme of the statute informs us that a visa 'refusal' is a procedural posture of a visa application that is separate from a determination of *eligibility* under the grounds listed in Section 1182 (INA 212)." ECF No. 15 at 8 (emphasis in original). Respectfully, Plaintiffs' construction of the statute fails to eviscerate the fact that the relevant statutory and regulatory provisions "do not provide a 'specific, unequivocal command' that Defendants issue a final, unreviewable decision on a visa, or to conduct or complete administrative processing once a visa has been refused[.]" *Sankari v. U.S. Dep't of State*, No. 2:24-cv-12975, 2025 WL 1550231, at *5 (E.D. Mich. May 30, 2025) (quoting *SUWA*, 542 U.S. at 63); *see also SUWA*, 542 U.S. at 63 (noting that "the APA carried

forward the traditional practice prior to its passage" from the All Writs Act, 28 U.S.C. § 1651(a), that "[t]he mandamus remedy was normally limited to enforcement of 'a specific unequivocal command'") (quoting *ICC v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)). As one court has aptly articulated the point, "[c]onspicuously absent" from the relevant provisions of the INA and its implementing regulations "is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'" *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024). Nor do any of these provisions "provide refused applicants with a right to re-adjudication." *See id.*

In essence, Plaintiffs are "effectively suing to compel a consular officer to make *another* final decision on their already refused visa application. [Plaintiffs have] not identified any legal basis for that duty – let alone a specific legislative command or a clear nondiscretionary duty. The Court has no power to order Defendants to readjudicate [the] application, nor can the Court compel an adjudication that has already occurred." *Myers v. Rubio*, No. 2:24-CV-1592, 2025 WL 1208646, at *6 (W.D. Pa. Apr. 25, 2025) (emphasis in original). Put simply, by refusing Plaintiff-Son's (and his family's) applications under 8 U.S.C. § 1201(g) after the July 24, 2023, interviews, the consular officer fulfilled the only nondiscretionary duty required of the officer: issue or refuse. *See* 22 C.F.R. § 42.81(a); 8 U.S.C. § 1201(g). Defendants thus discharged their nondiscretionary duties in total.

Plaintiffs maintain that placing Plaintiff-Son's (and his wife and child's) applications into "administrative processing" means no final adjudication has occurred. *See* ECF No. 15 at 6–7. This, however, does not establish that the July 24, 2023 refusal under § 221(g) was not the adjudication the regulations require. Neither 22 C.F.R. § 42.81(a) nor the INA itself contains a

"specific, unequivocal command" obligating the State Department to undertake or complete any particular post-refusal "administrative processing" or to re-adjudicate a refused application. *See SUWA*, 542 U.S. at 63–65. In short, the INA and its implementing regulations do not impose a nondiscretionary duty to complete administrative processing after a § 221(g) refusal.

Neither does § 555(b) of the APA, which Plaintiffs assert is "enough" to impose a nondiscretionary action requirement. ECF No. 15 at 9 (citing cases). This court is unable to read any such compulsion in that "[a]ncillary" provision of the APA, which simply states "that within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. 555(b). Section 555(b) "does not identify a discrete agency action; by its plain terms, it applies to *every* agency action." *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 262 (E.D.N.C. 2024) (emphasis in original), *appeal dismissed*, 2024 WL 5509498 (4th Cir. Dec. 9, 2024); *see also Yaghoubnezhad*, 734 F. Supp. 3d at 102 (stating that "this general directive will not cut it"). And so that provision is a "far cry from the 'discrete agency action' that courts require when issuing an order compelling agency action 'unlawfully withheld or unreasonably delayed.'" *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 1, 9 (D.D.C. 2008) (rejecting "Section 555(b) as a basis for relief under Section 706(1), which it is not") (quoting *SUWA*, 542 U.S. at 63). As the United States Court of Appeals for the District of Columbia expressed the point, "Section 555(b) does not in any way dictate" how Defendants "can handle [an applicant's] rejected paperwork" following the refusal of [his] visa application . . . and thus does not place a clear, non-discretionary duty on the consular officer to re-adjudicate [an] already refused application."

*Karimova*, 2024 WL 3517852, at *4.[7]

Because Defendants discharged their nondiscretionary duty upon the refusal of Plaintiff-Son's (and his wife's and child's) visa applications, Plaintiffs cannot articulate a redressable injury—and, therefore, standing—to pursue any claim seeking further adjudication of the applications. *See Sankari*, 2025 WL 1550231, at *6 ("Plaintiff here lost standing the moment the consular officer denied Mr. and Mrs. Sankari's visas under 8 U.S.C. § 1201(g).") (quotation and internal quotation marks omitted); *Martinez*, 2025 WL 2109964, at *5 (finding that "the better reasoned view is consistent with the consensus that 'a consular official's visa refusal under § 1201(g) fulfills the government obligations under the APA to conclude a matter presented to it,'" and concluding that the plaintiff failed to establish standing to pursue all claims seeking to compel further adjudication of a refused visa application) (quoting *Khaleel v. United States Dep't of State*, No. CV H-24-2970, 2025 WL 777082, at *4 (S.D. Tex. Mar. 11, 2025)); *Myers*, 2025 WL 1208646, at *6 (because the court cannot "compel an adjudication that has already occurred, . . . Plaintiffs' purported injury is not redressable by a favorable decision of this

---

[7] In following the persuasive analysis in *Karimova*, the court acknowledges that it is an unpublished opinion. However, *Karimova* "more closely resembles a published opinion in that it offers a more "comprehensive factual account and precisely crafted holdings," having been entered following oral argument and including "a rather lengthy exegesis of its legal reasoning." *Moradi v. Rubio*, No. 24-CV-2902 (GMH), 2025 WL 1865110, at *6 (D.D.C. July 7, 2025). Moreover, there is no doubt of "the D.C. Circuit's national quasi-primacy in administrative law" and its "clout in the field of administrative law that goes well beyond that which a non-parent Circuit usually wields." *See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 61 F. Supp. 3d 1013, 1073 & n.20 (D.N.M. 2014), *amended in part*, 2015 WL 5138286 (D.N.M. Aug. 26, 2015); *see also Slater Park Land & Livestock, LLC v. U.S. Army Corps of Eng'rs*, 423 F. Supp. 3d 1076, 1080 (D. Colo. 2019) (recognizing that "the D.C. Circuit is a leading authority on Administrative Law questions").

Court," and "Plaintiffs failed to establish Article III standing").[8] Some courts characterize the jurisdictional defect in these matters as mootness, or otherwise describe the absence of jurisdiction in general terms. *See, e.g.*, *Al Khalo v. Goldman*, 769 F. Supp. 3d 899, 904-05 (D. Neb. 2025) (finding that "placing a visa application in administrative processing after a consular officer issues an INA § 221(g) refusal does not leave the defendants with a mandatory, non-discretionary duty to further adjudicate the application within a reasonable time," and dismissing unreasonable-delay APA and mandamus claims for lack of subject-matter jurisdiction) (citing *Artan v. Dillard*, No. 4:24CV3114, 2024 WL 4611697, at *6 (D. Neb. Oct. 11, 2024) (dismissing unreasonable-delay claims for lack of subject-matter jurisdiction "because those claims will not lie")); *Yared*, 2025 WL 1067738, at *5 (holding that, "because there is no law requiring Defendants to take some further discrete, non-discretionary action concerning [a fiancée's] refused visa, this Court lacks jurisdiction over Yared's claims under both the Mandamus Act and APA"); *Nikpanah v. United States Dep't of State*, No. 2:24-CV-00404-NAD, 2025 WL 374931, at *10 (N.D. Ala. Feb. 3, 2025) ("Plaintiff cannot show for purposes of the APA that the State Department failed to take a discrete, mandatory action that it is required to take, much less a right to mandamus relief that is 'clear and indisputable.' Consequently, the court lacks

---

[8] *See also, e.g.*, *Meleo*, 2024 WL 4345289, at *7-9 (holding that plaintiffs lacked a redressable injury, and thus standing, where the court had no power to compel defendants to take further action after a visa application was refused and placed in administrative processing); *Soriano v. United States Dep't of State*, No. CV 2:25-222, 2025 WL 949565, at *4 (W.D. Pa. Mar. 28, 2025) ("[M]ost importantly, Plaintiff cannot demonstrate standing in this case because he admits that the Embassy denied [an] application, and the relevant statutes and regulations make clear that there is no non-discretionary duty for the consular officer at the Embassy to provide the visa applicant with extensive legal reasons for the denial nor to re-adjudicate a visa which has been refused.") (citing *Bimbo Bakeries USA, Inc. v. Rubio*, 771 F. Supp. 3d 584, 592 (E.D. Pa. 2025)).

jurisdiction over Plaintiff's mandamus/APA claim.") (quotation and citations omitted); *Kulagin v. Blinken*, No. A-24-CV-00953-ADA, 2025 WL 1231897, at *2 (W.D. Tex. Apr. 28, 2025) (the "denial of a visa application pursuant to § 1201(g) fulfills the government's duty to adjudicate the application and renders claims such as Plaintiffs' moot").

However the jurisdictional inquiry is characterized, these cases share a common factual predicate in that the administrative processing of a visa application continued after the application was "refused." In every case, the court concluded that it had no ability to take action: even if the plaintiff had submitted additional information for reconsideration, "the visa application 'remains refused' and thus the Court lacks jurisdiction to consider Plaintiff's request" to compel adjudication of the application." *See, e.g.*, *Zekiri v. Sec'y, U.S. Dep't of State*, No. 6:24-CV-1232-JSS-NWH, 2025 WL 2021308, at *5 (M.D. Fla. July 18, 2025) ("[B]ecause Plaintiff has not identified a nondiscretionary 'agency action' that was 'unreasonably delayed,' the court lacks subject matter jurisdiction under the APA.") (citing *SUWA*, 542 U.S. at 64) (other citations omitted); *Khalilijourabchian v. Hawkins*, No. 1:24-CV-02283-AJT-IDD, 2025 WL 1655330, at *3 (E.D. Va. June 10, 2025) (holding that subject-matter jurisdiction for APA and mandamus claims was lacking where plaintiffs failed to identify any "applicable regulation or statute that imposes upon the Defendants a non-discretionary duty to further consider or re-adjudicate their visa applications within a specific period of time"). Exactly so in Plaintiffs' case.[9]

---

[9] Other courts dismiss APA and Mandamus Act claims of the type Plaintiffs seek to bring for failure to state a plausible claim for relief under Rule 12(b)(6), as Defendants have requested here. Leading the way on that point is *Karimova*. *See* 2024 WL 3517852, at *3 (finding that

In finding that Plaintiffs have not met their burden to establish standing, the undersigned acknowledges both the lack of Tenth Circuit authority on the particular question before the court and the deep disagreement among judicial officers across the country who have considered the issue. Indeed, a United States District Judge in this District, for whom this court has enormous respect, has undertaken a thoughtful evaluation and reached a contrary conclusion. *Azadani v. Gaudiosi*, No. 24-cv-00825-CNS, 2025 WL 35597, at *4 (D. Colo. Jan. 6, 2025) ("[W]hile the consular officer issued a 'denial,' that denial did not end the process, as the application is still under consideration. Thus, the unreasonable delay claim is justiciable."). In *Azadani*, as in many other cases, courts have found that there is a continuing legal duty on the part of the State Department to complete administrative processing, thus rendering the consular officer's refusal

---

"[t]he district court properly dismissed [the claim premised on the APA and Mandamus Act] because Karimova has not identified any law 'plainly prescrib[ing]' that the consular officer not put an officially refused visa application in administrative processing") (quoting *ICC v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)); *see also, e.g.*, *Seifan v. Sweeney*, No. CV 25-261 (RC), 2025 WL 2171093, at *6 (D.D.C. July 31, 2025); *Moini v. Rubio*, No. 0:24-CV-62160, 2025 WL 2432845, at *6 (S.D. Fla. July 15, 2025), *report and recommendation adopted*, No. 0:24-CV-62160, 2025 WL 2414573 (S.D. Fla. Aug. 21, 2025). In dismissing these claims on the merits, courts have found that alleged delays of three years or more were insufficient to plausibly allege unreasonable delay. *See, e.g.*, *Al-Obaidi v. Blinken*, No. 3:24-CV-00419, 2024 WL 4536488, at *4 (M.D. Tenn. Oct. 2, 2024), *report and recommendation adopted*, 2024 WL 4535978 (M.D. Tenn. Oct. 21, 2024) ("case law does not support Plaintiff's assertion of unreasonable delay in approximately 17 months to date") (citing *Aljabari v. Mayorkas*, No. 21-CV-6645, 2022 WL 2073047, at *4 (N.D. Ill. June 9, 2022) ("while courts have not drawn a bright-line rule, they often consider delays between three and five years to be reasonable") (other citations omitted)); *Stone v. Blinken*, No. 2:23-cv-12181, 2024 WL 3556183, at *4 (E.D. Mich. July 26, 2024) (in granting the State Department's motion to dismiss an APA claim, citing case law generally recognizing that "immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable") (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020)).

"nonfinal." *See Sankari*, 2025 WL 1550231, at *7 (discussing cases). Courts also have expressed concerns about "the practical issues that would result if the Government were allowed to leave cases in administrative processing without the ability of courts to compel their completion." *See id.* (discussing cases).

This court discounts none of these concerns, as it recently stated in another matter raising the same questions as those raised in the instant case. *See Jung*, 2025 WL 2687983 at *12. But it bears reemphasizing that the court is not insensitive to the frustration of applicants who find themselves in procedural limbo while awaiting a decision on their request to immigrate. The court recognizes that applicants may not intuit that the legal process has concluded when, as here, the applicants were asked for additional information following their consular interviews. *See* ECF No. 1-2 at 7–9, 13, 15; ECF No. 15 at 3. Little wonder, then, that many applicants seek the aid of federal courts, at significant expense to themselves and with consequential impact on judicial resources. This court in no way criticizes these litigants, but it is nevertheless compelled to find—based on the irrefutable language of the pertinent statutory and regulatory provisions— that a pre-suit refusal of a visa application under § 1201(g) satisfies the consular officer's sole nondiscretionary duty to "issue or refuse" under 22 C.F.R. § 42.81(a). There being no discrete, legally required post-refusal action for this court to compel, Plaintiffs have not established that they have sustained an injury redressable under Article III.

Ultimately, the court cannot find that the analysis in the case law reaching a contrary conclusion focuses on the proper considerations. The fact that a consular official may reconsider an application is of no legal consequence because "[t]he mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal." *Sackett v.*

*EPA*, 566 U.S. 120, 127 (2012). And even if the State Department tells the applicant that his visa will be re-adjudicated, it "is irrelevant to the relief [the applicant] seeks," because the court's authority to compel agency action "is confined to compelling only discrete, *legally required* agency actions." *Yared*, 2025 WL 1067738, at *4 (citing *SUWA*, 542 U.S. at 64) (emphasis added). And much as this court might wish for greater clarity and efficiency in the State Department's visa-application process, "it is not for the Court to fix problems in the statutory and regulatory scheme that impact visa applicants whose cases are placed into administrative processing." *See Sankari*, 2025 WL 1550231, at *7 (observing that "[s]uch issues are for the legislature or rulemaking body to resolve") (citation omitted); *see also Datta v. Rubio*, No. 24-2937 (PLF), 2025 WL 752643, at *9 (D.D.C. Mar. 10, 2025) (finding that "the statutory gap that, in theory, allows agencies to issue pro forma refusals while continuing to administratively process visa applications is best filled by Congress, not this Court").

Importantly, the court's conclusion here also more closely comports with the long-established principle of judicial non-intervention in matters related to immigration. "For more than a century, [the Supreme Court] has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Dep't of State v Muñoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *see also Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry

23

or interference."); *Karimova*, 2024 WL 3517852, at *6 (recognizing a "background principle of judicial abstinence" that "underscores the absence of any clear command in law or precedent for the action Karimova seeks to compel"). Because these types of claims "fall outside the Judicial Branch's wheelhouse," *Karimova*, 2024 WL 3517852, at *5, this court respectfully finds the better-reasoned approach to be articulated in those decisions which—exercising restraint and hewing to a careful reading of the relevant statutory and regulatory language—hold that the government has no duty to take some further discrete, non-discretionary action after officially refusing a visa application, even though the application may have been placed in administrative-processing status. Following suit, this court declines to read into the statute and regulations a duty that patently cannot be found in them.

There being no specific, "clear command in law or precedent for the action [Plaintiffs] seek[] to compel," *Karimova*, 2024 WL 3517852, at *6, they fail to articulate a redressable injury necessary to establish standing to obtain the exceptional and rare relief of an order compelling further adjudication of Plaintiff-Son and his family's visa applications—whether under the APA or the Mandamus Act. Because Plaintiffs have failed to establish standing, their claims must be dismissed without prejudice. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (concluding that, "[s]ince standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice") (citation omitted).

\*        \*        \*

The court is prohibited from assuming that Article III standing exists in order to make pronouncements about the merits of an underlying claim, "regardless of the claim's

significance." *See Colo. Outfitters*, 823 F.3d 543 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (explaining that "such an approach . . . carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers")); *Henderson v. Reventics, LLC*, No. 23-cv-00586-MEH, 2024 WL 5241386, at *8 (D. Colo. Sept. 30, 2024) (declining to address arguments on failure to state a claim where Article III standing was lacking). Therefore, the court does not take up the questions whether dismissal is compelled based on the State Department's arguments that its decision to refuse Plaintiff-Son and his wife's and child's visa applications are non-justiciable under the nonjurisdictional consular-nonreviewability doctrine, *see Muñoz*, 602 U.S. at 908 n.4, or because Plaintiffs have failed to plead a plausible unreasonable-delay claim. *See* ECF No. 11 at 12-14.

## CONCLUSION

For the reasons set forth above, it is respectfully **ORDERED** as follows:

(1) Defendants' Motion to Dismiss Complaint (ECF No. 11) is **GRANTED**;

(2) Plaintiff's Complaint (ECF No. 1) is **DISMISSED without prejudice** for lack of subject-matter jurisdiction; and

(3) The Clerk of Court shall **TERMINATE** this matter accordingly.

DATED: September 24, 2025                BY THE COURT:

_____
Susan Prose
United States Magistrate Judge